Beveridge v. Chetlain.

John L. Beveridge, use, etc.,

v.

Augustus C. Chetlain, Administrator.

1    231
197s   456

1.  Restoring lost records under burnt records act—Secondary evidence.—The relief afforded to parties under the Burnt Records Act, is not exclusive, but cumulative, upon the rights and remedies existing independently of its provisions. Where a judicial record is shown to be lost or destroyed, resort may be had to secondary evidence to prove its contents. Notwithstanding some portions of the record were restored under the provisions of the Burnt Records Act, secondary evidence of other portions not so restored, may still be given.

2.  Practice in restoration of records—Notice.—Where the surety on a bail bond had no notice of the proceedings by which the affidavit and

Beveridge v. Chetlain.

pleadings in the case were restored, the restored record, at least so far as he was entitled to be heard on the question of its correctness, was, as to him, a nullity. To that extent it could not be received in evidence against him, or his legal representative. But, had such surety been served with notice of the petition to restore the declaration and pleas in the case, it is difficult to see upon what principle he would have been entitled to object that the copies offered to be substituted were not true copies of the original. He was in no sense a party to the suit, and had no interest in the subject matter, except so far as establishing the identity of the cause of action.

3. RESTORING AFFIDAVIT FOR CAPIAS—NOTICE TO SURETY ON THE BAIL BOND.—The liability of the surety on the bail bond, was directly dependent upon the sufficiency of the affidavit upon which the *capias* issued, and he was therefore directly interested in seeing to it that the original affidavit was restored with literal accuracy, and before the restored affidavit could be made competent evidence against him or his administrator, he should have been notified, so that he might have an opportunity to appear and object; therefore, there having been no notice to the surety of the restoration, the burden of proof was upon the party offering, of proving the contents of the original affidavit by secondary evidence, precisely as though no steps had been taken to restore the same.

4. BAIL BOND—VALID THOUGH NOT IN DOUBLE THE AMOUNT ENDORSED UPON THE WRIT.—A bond, although taken in a sum less than the statute requires, may still be held to be a valid bond, at least at common law. The provisons of the statute requiring the sheriff to take a bail bond in double the sum for which bail is required, are directory merely, and a bond taken for a less sum is valid and may be enforced.

5. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—The only proof of the sum endorsed on the writ, was the evidence of one witness, who testified that it was either $3,000 or $3,500. After the entry of judgment, and during the same term the affidavit of this witness was given in support of a motion for new trial, stating that the witness now recollected positively that the sum endorsed was $1,500. If the validity of the bond depended upon the amount endorsed upon the writ, the testimony of the witness, according to his subsequent recollection, would set the question at rest, and being decisive of an important question involved in the litigation, the appellant should have been accorded an opportunity of introducing it.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. MILLER & FROST and A. L. ROCKWELL, for appellant; arguing that a bail bond is valid, although not in double the amount endorsed upon the writ, cited Fournier v. Faggot, 3 Scam. 347; Young v. Mason, 3 Gilm. 55; Pritchett v. The People, 1 Gilm. 525; Holbrook v. Klenert, 113 Mass. 268.

Beveridge v. Chetlain.

That the bond having been destroyed by fire, secondary proof of its contents was admissible: 1 Greenl. Ev. 109; Starkie's Ev. 271; Buchanan v. Moore, 10 Serg. & Rawle, 275; White v. Lovejoy, 3 Johns. 448; Dillingham v. Snow et al. 5 Mass. 547; Stockbridge v. West Stockbridge Co. 11 Mass. 400; Harvey v. Thomas, 10 Watt. 63; Heirs of Ludlow v. Johnson, 3 Ohio, 69; Nelson v. Boynton, 3 Met. 96.

That a new trial should have been granted: DeGion v. Dover, 2 Aust. 517; Hewlett v. Cruchley, 5 Taunt. 277; Richardson v. Fisher, 1 Bing. 155.

Messrs. Small & Moore, for appellee; that a bail bond is void unless taken pursuant to the statute, cited Fournier v. Faggot, 3 Scam. 347; Stafford v. Low, 20 Ill. 152.

That the statute having provided a method of restoring lost records, and the plaintiff having restored a portion of the record under the statute, no action can be maintained upon the bail bond unless the same has been restored: Steveson v. Earnest, 80 Ill. 513.

Bailey J. On the 20th of October, 1868, Oliver Smith being about to commence, in the Circuit Court of Cook County against one George Aylesworth, an action on the case for false imprisonment, filed his affidavit as required by the statute, and thereupon sued out a writ of *capias ad respondendum*, upon which said Aylesworth was arrested and held to bail. Aylesworth, thereupon, executed to John L. Beveridge, then sheriff of Cook county, a bail bond in the penal sum of $3,000, with Martin O. Walker as his surety, and was discharged from said arrest.

While this suit was pending and undetermined, the files and records in the case were destroyed by the great fire of October 9th, 1871. Afterwards the plaintiff filed a petition under the provisions of the act of March 19, 1872, relating to the restoration of lost records, to have a certain portion of the records in said suit restored; and upon notice to Aylesworth, an order was entered restoring the affidavit, declaration and pleas. A trial was afterwards had, resulting in a judgment in favor of the plaintiff and against the defendant for $6,000 and costs. Upon

this judgment a writ of *fieri facias* was duly issued and returned wholly unsatisfied.   Subsequently a writ of *capias ad satisfaciendum* was issued against Aylesworth, and returned *non est inventus*.

Pending these proceedings, Martin O. Walker, the surety on the bail bond, died, and after the return of the last mentioned writ, a claim against his estate was filed in the County Court of Cook county, to enforce his liability on said bond.   The County Court, upon a hearing of the matter of this claim, found the issues for the administrator and rendered judgment against the claimant for costs.   From this decision said claimant prosecuted an appeal to the Circuit Court, and upon a trial in that court the issues were found for the administrator, and the Court, after overruling a motion by said claimant for a new trial, rendered judgment against him, affirming the judgment of the County Court and for costs.   Subsequently, at the same term, a further motion was interposed to vacate said judgment and award a new trial, on the ground of newly discovered evidence, which motion was overruled and exception taken.

On the trial in the Circuit Court appellant was permitted, against the objection of appellee, to give in evidence the restored affidavit and pleadings, and also to give secondary evidence of the original *capias ad respondendum*, the endorsement thereon, and the bail bond.   The judgment below being in appellee's favor, we cannot see how he has been prejudiced by this ruling, even if it was erroneous.   He has assigned no cross errors, and we are aware of no principle upon which he can be permitted to call it in question.   As the admissibility of this testimony, however, has been elaborately argued by counsel on both sides, we are inclined to indicate our opinion in respect to it.

So far as secondary evidence was admitted to prove the contents of the portions of the record not restored, we think the ruling of the Court below was undoubtedly correct.   The relief of which parties may avail themselves under the provisions of the Burnt Records Act is not exclusive, but is merely cumulative upon the rights and remedies existing independently of its provisions.   It has always been held that where a judicial

record, or other paper is shown to be lost or destroyed, resort may be had to secondary evidence to prove its contents. Records are deemed, in law, to be still in existence and binding upon the parties whose rights are affected thereby, although, in point of fact, they may have been destroyed. A judgment of a court, or a bond entered into in the course of a judicial proceeding, loses none of its vitality upon destruction of the writing, which is the primary evidence of its existence. Its contents may still be proved, and its provisions enforced to the same extent as though the paper itself were capable of being produced in evidence. The *capias* and bond having been destroyed, appellant was entitled to avail himself of their provisions by means of secondary evidence notwithstanding the restoration of other portions of the record under the provisions of the act.

But it appears that the surety on the bail bond had no notice of the proceedings by which the affidavit and pleadings were restored. The restored record, at least so far as he was entitled to be heard on the question of its correctness, was, as to him, a nullity. Harris v. Lester et al. 80 Ill. 307. To that extent it could not be received in evidence against him or his representative. This being the case, we fail to see any principle upon which it can be set up as a ground for excluding secondary evidence of those portions of the record not restored.

We think the court decided correctly in admitting in evidence the restored record of the pleadings. Had the surety on the bail bond been served with notice of the petition to restore the declaration and pleas, we cannot see upon what principle he would have been entitled to object that the documents offered to be substituted for those destroyed were not true copies of the same. He was in no sense a party to the pleadings, and had no interest in their subject matter, except so far as they might be resorted to for the purpose of establishing the identity of the cause of action upon which the judgment was rendered with that for which the capias was issued. That identity depended upon the condition of the pleadings as they stood at the time of the trial and judgment, and not upon their condition at any previous period in the history of the suit. It

would have been competent for the parties, by leave of the court, at any time before final judgment, to have changed the form of the pleadings to any extent, provided the identity of the subject matter of the litigation was preserved; and such changes would in no manner have affected the liability of the surety on the bond. It was then unimportant, so far as the surety was concerned, whether the pleadings restored were or were not identical with those destroyed.

We are inclined, however, to doubt the correctness of allowing the record of the restored *affidavit* to be given in evidence against the appellee. The liability of the surety on the bail bond was directly dependent upon the sufficiency of the affidavit, and had appellee been able to show that the case there made was not sufficient to justify the issuing of the *capias*, he would have made out a complete defense. Stafford v. Low, 20 Ill. 152. The surety, then, was directly interested in seeing to it that the original affidavit was restored with literal accuracy, and before the restored affidavit could be made competent evidence against him or his administrator, he should have been notified, so as to have had an opportuity to appear and object to filing any paper not an exact, or at least in all respects a substantial, copy of the original. It would seem, therefore, that the burden was on appellant, of proving the contents of the original affidavit by secondary evidence, precisely as though no steps had been taken to restore the same.

The court below, upon the trial, held the bail bond to be void on the ground that it appeared that it was not taken in double the sum in which the defendant was ordered to be held to bail. The bond is shown to have been in the sum of $3,000, and in the affidavit of appellant's claim filed in the County Court, which, in this record, stands in the place of a declaration, it is. averred that upon filing the affidavit for a capias, the defendant was held to bail in the sum of $3,000.

By the statute in force at the time the capias was issued, it was provided that the clerk of the court, upon the delivery to him of a sufficient affidavit to hold to bail, should issue a capias and make an order thereon, specifying the amount in which the defendant should be required to give bail, and that the

Beveridge v. Chetlain.

sheriff to whom the writ was directed should take a bail bond to himself, with sufficient security in a penalty double the sum for which bail was required.

According to the case made by the pleadings and proofs, it would seem that the sheriff who executed this capias failed to obey the direction of the statute in relation to the amount of the bond, and inserted a penalty in the sum indorsed on the writ instead of double that sum.

We think the court below erred in holding the bond to be void, for this reason. Although taken in a sum less than the statute required, it may still be held to be a valid bond, at least, at common law. "When bonds varying in some respects from the requirements of statutes have been given, there has been always a strong disposition to hold them to be good at common law if the parties to the instrument were right, and if the bond was in substance that which the obligors had a right to make, and contained no conditions contrary to those which were prescribed by law." Holbrook v. Klenert, 113 Mass. 268. Thus, where the statute requires the surety in a bail bond to be a resident of the state, yet if a non-resident be received as bail, it is held that he will be bound. Commonwealth v. Ramsey, 2 Duval, 385; Glezen v. Rood, 2 Metc. (Mass.) 490. So, also, where the statute requires two or more sureties, and but one signs the bond. Holbrook v. Klenert, *supra;* Lane v. Smith, 2 Pick. 280, 283. It has been frequently held in Massachusetts that a bond for the liberty of the jail yard, though taken for less than double the sum for which the prisoner is committed, and so not within the statute, is still a good bond at common law, and may be enforced as such: Clapp v. Cofran, 7 Mass. 98; Freeman v. David, Id. 200; Burroughs v. Lowder, 8 Id. 373.

In Whittier v. Way, 6 Allen, 288, it appears that the statute provided that where a debtor was arrested on execution, and carried before a magistrate, the magistrate might "accept his recognizance with surety or sureties in a sum *not less* than double the amount of the execution." In that case the recognizance was taken in a sum less than double the amount of the execution on which the debtor was arrested; and the court, in

holding the bond to be valid, use the following language: "This provision in reference to the minimum sum is principally for the security of the creditors. The acceptance of the recognizance is for the present relief of the debtor; to free him from arrest and set him at liberty until the arrival of the time duly fixed for his examination, preparatory to the administration of the oath which he desires to take. This object is attained, and he has the full advantage of it, although the magistrate has not strictly followed the directions of the statute. The obligation is voluntarily assumed by him and his sureties; nothing beyond what the statute allows has been required of him. Neither he nor they can be injuriously affected in consequence of the recognizance being accepted in a sum *less* than that which might have been required. It is the creditor only who can have any possible cause of complaint on this account; and if he is contented to abide by it there seems to be no reason why it should not be enforced. The magistrate being authorized to accept the recognizance, the provision in relation to the sum in which it is to be taken may be considered as directory only; and if no burden or obligation is imposed upon or required of the debtor beyond what the law allows, there is no reason why a recognizance voluntarily entered into by him and his sureties should be held to be invalid. It is otherwise when a party in custody, in order to obtain liberation, is compelled to assume an obligation *greater* than that which the law requires of him."

In the light of these authorities we are of the opinion that the provision of the statute requiring the sheriff to take a bail bond in double the sum for which bail was required, was *directory* merely, and that a bail bond taken for a *less* sum, is valid and enforceable.

We also think the court below erred in overruling appellant's motion for a new trial, based on the ground of newly discovered evidence.

The only witness by whom appellant proved the order endorsed on the capias fixing the sum in which the defendant should be held to bail, was the attorney who drew the affidavit and sued out the writ. This witness, when examined upon the trial below, was unable to fix the sum endorsed on the writ

with certainty, but gave it as his recollection that said sum was either $3,000 or $3,500. After the entry of judgment and during the same term an affidavit of this witness was filed on behalf of appellant, stating that he was mistaken in his testimony in this respect, and that since the trial the circumstances of the issuing of the capias and of the indorsement thereon of the amount of bail had come back to his remembrance, so that he now distinctly recollects and is positive that said endorsement was $1,500 instead of $3,000.

Many cases are to be found where new trials have been awarded upon grounds similar to those here presented: Mitchell v. Bass, 26 Texas, 372; Scofield Rolling Mill Co. v. The State, 54 Georgia, 636; De Gion v. Dover, 2 Anst. 517; Hewlett v. Cruchley, 5 Taunt. 277; Richardson v. Fisher, 1 Bing. 145. See, also, Archer v. Heidt, 55 Georgia, 200.

If the validity of the bond depends upon the amount of bail endorsed upon the writ, the testimony of this witness, if he is permitted upon another trial to correct his mistake and give evidence according to his present clear and positive recollection, will, so far as we can perceive, place the question of its validity beyond controversy. This testimony being so clearly decisive of an important question involved in the litigation, and a question which upon the view of the law taken by the court below was controlling, appellant should have been accorded an opportunity of introducing it.

We cannot see that appellant was guilty of any laches in not producing this testimony on the trial. The mistake was clearly a mistake of the witness, for which he was not responsible.

It is true this testimony, if introduced, will make a case variant from the one made by the pleadings. This we think was no sufficient answer to the motion to set the judgment aside and award a new trial, for the purpose of allowing it to be given. It is the evident intention of the twenty-third section of the Practice Act, that the rights of parties litigant should be determined upon the cases made by their proofs, and that their rights should not be denied in consequence of mistakes of pleading, at least until their attention is so directed to the erroneous averment as to afford an opportunity to make appli-

cation to the court for leave to amend. Before another trial, appellant should be accorded an opportunity, if he desires it, of so amending his pleading as to make it conform to the proofs which he now expects to be able to introduce.

For the errors above pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.